MORRIS SIEGEL, Plaintiff, *v.* WALTER R. GORDON and CITY BANK FARMERS TRUST COMPANY, as Testamentary Trustees, Defendants.

Supreme Court, Trial Term, Queens County, June 2, 1937.

*Shapiro, Kolbrener & Schlissel* [*J. Irwin Shapiro* of counsel], for the plaintiff.

*E. C. Sherwood* [*J. O. Denniston* of counsel], for the defendants.

HALLINAN, J. In this action for personal injuries a jury was waived and an agreed statement of facts submitted to the court, which provides that in the event that the facts stipulated state a cause of action in favor of the plaintiff against the defendants herein, judgment be directed in favor of the plaintiff against the defendants, in the sum of $2,500, with costs, and that otherwise the complaint be dismissed with costs.

Thus the sole question for determination by the court is whether the facts alleged in the agreed statement of facts makes out a case of liability against the defendants.

The defendants are testamentary trustees, duly qualified, and in such capacity are the owners of the premises No. 730 Sixth avenue, in the borough of Manhattan, city and State of New York. There is erected upon said premises a multi-story building, which is separately rented by the defendants to various tenants to whom steam is supplied by the defendants from a central heating plant located in the cellar of the premises. However, said central heating plant is entirely in the portion of the cellar not leased to Kwong Tung Cafeteria, Inc., which was one of the tenants in the said premises. This tenant leased a store and a portion of the cellar directly beneath it, under a written lease dated November 21, 1934. The portion of the cellar occupied by this tenant was partitioned off from the rest. The entrance to the cafeteria portion of the cellar was on the Sixth avenue side of the premises, leading from the sidewalk thereto. The entrance was covered by two cellar doors which were level, or practically so, with the sidewalk into which they opened. These cellar doors were not mechanical but operated manually.

The defendants did not provide any means of warning to passers-by when the said cellar doors were about to be opened.

" That on April 8th, 1935, at or about 2:30 P. M. on that day, plaintiff was proceeding in an ordinary and reasonably prudent manner on the sidewalk of Sixth Avenue immediately in front of

said premises; that as plaintiff was so proceeding and as he was about to step on and over one of said cellar doors, the same was lifted outwardly from the inside by a Chinese employee of Kwong Tung Cafeteria, Inc., without any notice or warning being given to persons walking on said sidewalk, and more particularly to the plaintiff, that it was so about to be opened; that the person opening the cellar doors was not in the employ of the defendant City Bank Farmers Trust Company, as Trustees, etc., or engaged in its business at the time the plaintiff was injured, but was engaged in the business of Kwong Tung Cafeteria, Inc.; that by reason of said doors being thus suddenly opened without any notice or warning plaintiff, who was walking thereon, was catapulted from his feet to the ground causing him to sustain injuries."

Professor Bohlen, in his work, " Studies in the Law of Torts " (note, p. 210), states: " But the owner has, as such, a duty to maintain his property in such a condition that it shall not be dangerous to the public, whether as travelers on a highway upon which it abuts, or as owners of adjacent property, or as persons upon such property in the owner's right quite independent of his or the occupier's consent. His duty may be suspended, when in a legally permissible way, as by leasing the premises, he parts with his right to enter it and so loses his power to perform his duty to maintain it in safe condition; but when by a covenant to repair he retains the right of entry and the power for performance, the reason for the suspension of his duty fails. This is similar to the difference in the liability which a landlord incurs to the public and those injured while within premises which he leases in a patently ruinous condition, both external and internal." (See *Appel* v. *Muller*, 262 N. Y. 278, at p. 283.)

The Appellate Division in this Department has, in the case of *Pensa* v. *Raleigh Hall, Inc.* (243 App. Div. 816), decided March, 1935, stated: " The duty of the owner to make the use of the sidewalk safe for traffic or give adequate warning of the danger to be apprehended was a non-delegable one, as long as it retained control of the premises."

Thus it would seem that the crucial question to be decided herein is whether the defendants *retained control of the premises.*

It is contended by the defendants that they had relinquished all control over the cellar doors, and had given up possession and control of the entire premises to be served by the said cellar doors, and that therefore they are not liable for the accident in question.

" The duty, that of using care towards a member of the public, was established when the landlord came into ownership of the property. It might have been suspended during the exclusive occupancy of the tenant, for the power of entry to make repairs

would have been lost. If, however, there is a covenant to repair, the landlord's original duty to the public to maintain the structure in safe condition, and his retention of the power to perform the duty, combine to make him liable." (*Appel* v. *Muller, supra.*)

The fifth paragraph of the lease between the cafeteria and the defendants, provided in part as follows: "The lessee will at any time during the term permit inspection of the demised premises during reasonable hours, by the lessor or the lessor's agents or representatives, and by or on behalf of prospective purchasers * * *. If at reasonable hours admission to the premises for the purposes aforesaid cannot be obtained, or if at any time an entry shall be deemed necessary for the inspection or protection of the property, or for making any repairs or decorations, the lessor or lessor's agents may enter into the same by means of a master key or otherwise."

While it is true that the lease contained no covenant by the landlord to make repairs, it did contain the provision above quoted, permitting entry " deemed necessary for the inspection or protection of the property, or for making any repairs or decorations."

Similarly, in the case of *Appel* v. *Muller* (*supra*) there was no covenant by the landlord to make repairs, although there was a provision reserving to the landlord " the right to enter into and upon said premises, or any part thereof, at all reasonable hours, for the purpose of examining the same, or making such repairs or alterations therein as may be necessary for the safety and preservation thereof."

It will thus be seen that in both the instant case and the *Appel Case* (*supra*) the language of the landlord's reservation to enter for inspection and examination or making such repairs or decorations or alterations for the protection or preservation of the property, is almost identical. And as the Court of Appeals in the *Appel Case* (*supra*) by reason of this provision held that " the landlord * * * had never parted so completely with possession and control that he had disabled himself from performing his duty of care towards the travelers upon the street," so in the case at bar, must it be held that by reason of the fifth provision of the lease, the landlord had never parted so completely with possession and control that they had disabled themselves from performing their duty of care towards the travelers upon the street. They " continued under the duty to keep * * * building in a safe condition; " they " reserved the power to perform this duty." They are, therefore, liable.

Accordingly, judgment is awarded to the plaintiff against the defendants in the sum of $2,500, with costs, thirty days' stay and sixty days to make a case.