HELEN E. RELIHAN, Appellant, *v.* ARTHUR M. FELSON, Respondent.

MATHEW P. RELIHAN, JR., Appellant, *v.* ARTHUR M. FELSON, Respondent.

Third Department, June 3, 1944.

*Scheiberling & Schneider,* attorneys for plaintiffs.

*Jacob M. Frankel,* attorney for defendant.

HEFFERNAN, J. Defendant is the owner of a four-family house, consisting of two apartments on the first floor and two

on the second floor located on the corner of Victory Avenue and Mynderse Street in the city of Schenectady, N. Y.

Plaintiffs, husband and wife, occupied one of the apartments on the second floor facing Mynderse Street. They had been in possession of these premises for more than a year prior to May 25, 1943, upon which date the wife was injured. The other apartment on the same floor facing Victory Avenue was occupied by Mr. and Mrs. Dieterich. In the rear of the dining room of plaintiffs' apartment there is a door which leads into a hallway which separates the two apartments. From the hallway there are two stairways, one leading to Victory Avenue and the other to the attic floor of the building. The hall was partially covered by a floor mat.

On May 25, 1943, while Mrs. Relihan was visiting Mrs. Dieterich she was requested by the latter to ascertain if there was any mail in the Dieterich mailbox. In compliance with this request Mrs. Relihan was about to descend the stairway when she stumbled and fell on the floor mat on the landing at the top of the stairs and sustained somewhat serious injuries. As a result she instituted this action to recover damages for her personal injuries and her husband's suit is predicated upon the loss of his wife's services and the expense to which he was put in connection with her treatment and care.

At the close of the plaintiffs' proof the trial court granted defendant's motion for a nonsuit and a dismissal of the complaint, to which rulings plaintiffs excepted and from which plaintiffs have come to this court.

In reviewing the rulings of the trial court the appellants are entitled not only to the most favorable interpretation of the testimony adduced by them, but to the benefit, as well, of the most favorable inferences to be drawn from that testimony; and judgment of nonsuit may not be sustained in any case in which, by any logical process of reasoning, an issue of fact may be found.

We think questions of fact are presented for submission to and determination by a jury and that the rulings of the trial court cannot be sustained.

At the time plaintiffs rented the premises defendant expressly authorized the wife to use this hallway as an approach to a rear porch for convenience in handling the family laundry.

Defendant reserved to himself, or so a jury might have found, control of this hallway and the stairway leading thereto from Victory Avenue and also of the stairway leading to the attic in which he kept a thermostat. On the record before us a

jury would be justified in concluding that defendant retained control and possession of the landing and the stairway so as to make himself liable for their safe condition. As a matter of fact the proof discloses that he retained a key to the Victory Avenue entrance so that he might enter and leave the premises at will. The uncontradicted evidence is that he used this means of ingress and egress at least weekly. The latest pronouncement of the Court of Appeals on this subject, *Antonsen* v. *Bayridge Savings Bank* (292 N. Y. 143), requires that the question as to the extent of defendant's reservation and control over these premises be determined by a jury.

The evidence in the record is also sufficient to warrant a jury in finding that the mat on which the wife fell was not properly affixed to the floor, was torn and defective and that defendant knew, or should have known, in the exercise of reasonable care, that it constituted a dangerous obstruction to persons lawfully using the hallway and stairway.

The judgments appealed from should be reversed on the law and a new trial granted, with costs to appellants to abide the event.

HILL, P. J. (dissenting). Plaintiffs appeal from judgments of nonsuit entered in accordance with an order made by the Trial Justice at the close of their cases. The action by the wife is for damages arising from personal injuries, and of the husband for medical expenses and loss of services. Plaintiff wife was injured by falling down the upper part of a stairway leased by defendant to one Dieterich. The Dieterich premises were designated 302 Victory Avenue, Schenectady, the Relihan premises 15 Mynderse Street, also owned by and leased from defendant. These two second-floor apartments were in a building located at the corner of the two streets. There is no evidence as to written leases, or terms concerning repairs or otherwise. There was a door in the dining room of the Relihan-Mynderse Street apartment which could be opened into a hall of the Dieterich-Victory Avenue apartment. On the day in question, the appellant wife was visiting Mrs. Dieterich. She describes the manner in which she received her injury: " Yes, I left Mrs. Dieterich's apartment to go down and see if there was any mail for her, she asked me to go down, she was busy with the baby. * * * I left Mrs. Dieterich's apartment to go down to the mail box. As I approached the stairway to take the first step down, I tumbled, I felt something give and I landed upon the first landing all in a heap. I

screamed for Mrs. Dieterich. * * * Q. After you fell did you make an observation of the second floor landing at the head of the stairs as to the area in which the rubber mat, the rubber pad, was located there? A. Well, as I lay upon the stairs and screamed for Mrs. Dieterich, I turned my head around and discovered what I had fallen on, there was the door mat, the mat turned over." She further says that Mrs. Dieterich, enroute to aid her, " flopped it back."

Reversal is asked on the theory that this was " a common hallway used by various tenants and their visitors, including the defendant owner himself " and that the existence of a defective condition was known to him. There is no proof that defendant had knowledge of a dangerous condition. There were no tenants above the ground floor except the Dieterichs and Relihans. The hall where the mat was located was cleaned and cared for by the Dieterichs. No attention was ever given it by the Relihans or by the defendant. The only use which Mrs. Relihan made of the hall was " to use Mrs. Dieterich's clothes line " and to visit Mrs. Dieterich. " The only time I used that doorway was when I went in to hang up my clothes over Mrs. Dieterich's line, or if I happened to be asking a favor of Mrs. Dieterich." The plaintiff Mr. Relihan first said concerning his observation of the Dieterich hall and mat, " I do not think I had gone over it because I do not go to that stair hall at all." He then corrected his testimony as follows: " I did not say never, I had gone down it, I used it very, very infrequently. * * * Q. Upon the occasion that you did use it, could you see the condition of the floor mat that existed there? A. I did not notice it." The owner at times went through the hall to the attic to look after a thermostat; he entered the Relihan apartment but twice in sixteen months for the purpose of repairs, to fix an electric light socket and to repair a plumbing leak; he also called at each apartment for the rent.

There is little testimony concerning the floor mat beyond that quoted except it is asserted that the photographs show that the edge farthest from the head of the stairs was not nailed. No lack of repair was proven beyond this. There is no proof that the stair mat was a fixture left by the owner. It is of the same appearance as the one immediately at the head of the stairs, which it might be inferred was the beginning of rubber matting on the stairway.

There is no proof that defendant knew the mat was not nailed, or that it had been called to his attention as a dangerous condition. The proof indicates that the hall was not common,

but a part of the premises leased to Dieterich, and that the Relihans used it by permission. Had it been a common hall for the benefit of the premises fronting on Mynderse Street as well as those on Victory Avenue, and in the control of the defendant, he would have been under the duty of exercising reasonable care in keeping it in suitable repair and condition for the use of tenants using the apartments to which it led. (*Dollard* v. *Roberts,* 130 N. Y. 269.) Under the evidence, the Dieterichs would have had no remedy had one of them fallen by having the mat turn over and, under the common law, where there is no remedy for a tenant, there is none for visitors to the apartment coming with the tenant's consent. (*Hilsenbeck* v. *Guhring,* 131 N. Y. 674; *Cullings* v. *Goetz,* 256 N. Y. 287, 292; *Potter* v. *N. Y., O. & W. Ry. Co.,* 261 N. Y. 489; *Lafredo* v. *Bush Terminal Co.,* 261 N. Y. 323; *Appel* v. *Muller,* 262 N. Y. 278; *Welson* v. *Neujan Building Corp.,* 264 N. Y. 303; *Fink* v. *37 West 36th Street Co.,* 277 N. Y. 703; *Elefante* v. *Pizitz,* 182 App. Div. 819.)

A mere reservation by a landlord of the right to inspect the building or to make repairs if necessary does not operate to place the owner in charge of the building, or to make him liable. (*Homin* v. *Cleveland & Whitehill Co.,* 281 N. Y. 484, 489; *Pharm* v. *Lituchy,* 283 N. Y. 130.)

*Antonsen* v. *Bay Ridge Savings Bank* (292 N. Y. 143) is not an authority at variance with *Cullings* v. *Goetz* (*supra*) and does not change a rule of law which for years has been settled. The judgments should be affirmed.

Bliss and Schenck, JJ., concur with Heffernan, J.; Hill, P. J., dissents in an opinion in which Brewster, J., concurs.

Judgments appealed from reversed on the law and a new trial granted, with costs to appellants to abide the event.